**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY, et al.,** <br>          **Plaintiffs,** <br><br>          v. <br><br> **BRIAN NESVIK, in his official capacity, and UNITED STATES FISH AND WILDLIFE SERVICE,** <br>          **Federal Defendants,** <br><br> **SPACE EXPLORATION TECHNOLOGIES, CORP.,** <br>          **Intervenor-Defendant.** | **Civ. A. No. 1:26-cv-2053 (JDB)** |

## MEMORANDUM OPINION

This case concerns a proposed land exchange between the U.S. Fish and Wildlife Service and Space Exploration Technologies Corp. ("SpaceX") regarding the Lower Rio Grande Valley National Wildlife Refuge ("Rio Grande Refuge") and the Laguna Atascosa National Wildlife Refuge ("Laguna Atascosa Refuge"), both located in Cameron County, Texas. Plaintiffs—Center for Biological Diversity, Save RGV, Carrizo/Comecrudo Nation of Texas, Inc., and South Texas Environmental Justice Network—sued the U.S. Fish and Wildlife Service and Brian Nesvik, in his official capacity, challenging the proposed land exchange and seeking injunctive relief and a declaratory judgment. SpaceX moved to intervene as a defendant in this action, and the Court granted its motion.

Presently before the Court are the government's and SpaceX's motions to transfer this action to the United States District Court for the Southern District of Texas. Defendants argue that

1

transfer is warranted because this action concerns land in Texas, the work and decision-making has been largely concentrated in Texas, and the proposed exchange would have a direct impact on the people and environment of Texas. Because plaintiffs could have brought this action in the Southern District of Texas and convenience and the interest of justice weigh in favor of transfer, the Court will grant the motions to transfer.

## BACKGROUND

The Rio Grande Refuge was established for "the development, advancement, management, conservation, and protection of fish and wildlife resources" and currently comprises over 103,000 acres of land, including the 11,500-acre Boca Chica Tract. Decl. of Leston Stewart Jacks ("Jacks Decl.") ¶¶ 7, 9, Dkt. 14-1. It "provides critical habitat for species protected under both the Endangered Species Act and the Migratory Bird Treaty Act." Compl. ¶ 70, Dkt. 1. The Refuge is not only an environmental sanctuary but has historical and cultural significance as well. It overlaps with portions of the Palmito Ranch Battlefield, the final battle site of the Civil War and a designated National Historic Landmark, id. ¶¶ 79-81, and includes Boca Chica Beach, used by the Carrizo/Comecrudo Tribe of Texas as sacred land for "ceremonial life ways," id. ¶ 14. Today, the Refuge and SpaceX facilities neighbor each other, and SpaceX owns several parcels of land within the Refuge. Jacks Decl. ¶¶ 9-10.

Plaintiffs are a mix of nonprofit environmental and cultural heritage organizations. Compl. ¶¶ 12-15. Three of the four plaintiffs—Save RGV, Carrizo/Comecrudo Nation of Texas, Inc., and South Texas Environmental Justice Network—are based in Texas. Id. ¶¶ 13-15. The fourth plaintiff—Center for Biological Diversity ("the Center")—is headquartered in Tucson, Arizona, with an office in Washington, D.C. Id. ¶¶ 11-12. The D.C. office includes the Center's government

2

affairs program, which conducts lobbying efforts related to this land exchange and other issues. Opp'n at 7-8, Dkt. 21.

Defendant U.S. Fish and Wildlife Service ("the Service") is a federal agency headquartered in Washington, D.C., that oversees the National Wildlife Refuge System and manages the Rio Grande and Laguna Atascosa Refuges. Compl. ¶ 24. Defendant Brian Nesvik, the Director of the Service, manages the National Wildlife Refuge System and is based in Washington, D.C. Id. ¶ 23; Opp'n at 1. Intervenor-Defendant SpaceX is incorporated in Texas and has significant operations and facilities throughout Texas. Decl. of Justin Styer ("Styer Decl.") ¶¶ 5-6, Dkt. 15-2. And since 2014, SpaceX has been acquiring land near Boca Chica to develop Starbase, its headquarters and rocket launch facility, which was incorporated as a new city in 2025. Jacks Decl. ¶ 12; Styer Decl. ¶ 6.

In 2023, the Service and SpaceX began discussions of a proposed land exchange.[1] Compl. ¶ 92. The goal of the exchange is to "reduc[e] the fragmented ownership of the Boca Chica Tract and consolidat[e] lands for management by the Service." Jacks Decl. ¶ 13. SpaceX seeks to use the land it may acquire for "residential, commercial, industrial, and infrastructure purposes," further expanding its operations in Cameron County. Styer Decl. ¶ 14. To date, the exchange has been managed by the Service's Southwest Region Office located in Albuquerque, New Mexico, and the South Texas Refuge Complex Office based in Alamo, Texas. Jacks Decl. ¶ 26.

As required under the National Environmental Policy Act, Rio Grande Refuge staff conducted an Environmental Assessment in consultation with Texas-based stakeholders to analyze the potential impacts of the exchange. Jacks Decl. ¶ 20; see also 42 U.S.C. § 4336(b)(2); U.S. Fish

---

[1] The Service has authority to exchange land under the National Wildlife Refuge System Administration Act, which "provides that the divested land must be 'suitable for disposition' and the value of the land exchanged must be approximately equal." Jacks Decl. ¶ 22; see also 16 U.S.C. § 668dd(b)(3).

& Wildlife Service, Final Environmental Assessment (May 2026) ("EA") 46-48, Dkt. 11-3.

Following a public comment period, on May 21, 2026, Leston Stewart Jacks, Acting Regional

Director of the Service, Southwest Region, signed a Finding of No Significant Impact ("FONSI")

approving the proposed land exchange.  U.S. Fish & Wildlife Service, Finding of No Significant

Impact and Decision for Lower Rio Grande Valley and Laguna Atascosa National Wildlife Refuges

Boca Chica Land Exchange (May 21, 2026) ("FONSI"), Dkt. 11-4.

As it stands, the exchange would transfer around 715 acres of land owned by the United

States from the Rio Grande Refuge and Palmito Ranch Battlefield to SpaceX.  Compl. ¶¶ 1, 134;

FONSI at 2.  In exchange, SpaceX would provide approximately 683 acres of land it privately

owns to the United States to be added to the Rio Grande Refuge and Laguna Atascosa Refuge.

Compl. ¶ 1; FONSI at 2.

Since the exchange is larger than 40 acres, it must be approved by the Director of the

Service.  Jacks Decl. ¶ 25; see also U.S. Fish & Wildlife Service, Fish and Wildlife Service Manual,

342 FW 5.7.C.  While these motions were pending, the Director approved the exchange.  U.S. Fish

& Wildlife Serv. Decision Mem. at 8, Dkt. 26-21; Pls.' Notice of Filing of Director's Approval,

Dkt. 27.[2]  And now, because the land is worth over $1 million, the proposal must be sent to the

House and Senate Committees on Appropriations for a 30-day examination period.  Id. at 3; Opp'n

---

[2] The government has moved to strike plaintiffs' notice of the Director's approval on the grounds that it is a procedurally improper surreply.  Gov't's Mot. to Strike, Dkt. 30.  Plaintiffs have now opposed that motion.  Pls.' Resp. to Mot. to Strike, Dkt. 32.  The Court agrees with plaintiffs.  Motions to strike are "a drastic remedy that courts disfavor."  Moore v. United States, 318 F. Supp. 3d 188, 190 (D.D.C. 2018) (citing cases).  Moreover, here plaintiffs are merely making the Court aware of a subsequent factual development that bears on this case, and courts routinely accept such notices.  See, e.g., Tax Analysts v. DOJ, 759 F. Supp. 28, 32 (D.D.C. 1991) ("[T]his Court often accepts supplemental filings provided to apprise the Court of new developments that arguably could affect the Court's decision.").  Thus, the notice is not a procedurally improper surreply, and this Court will deny the government's motion to strike.

at 9 n.3.  After the congressional review period, the Southwest Region Director can proceed with the exchange and sign the final Land Exchange Agreement.  Jacks Decl. ¶¶ 29-30.

Plaintiffs brought suit challenging the exchange, seeking injunctive relief and a declaratory judgment that the exchange violates the National Wildlife Refuge System Administration Act, 16 U.S.C. § 668dd, the National Historic Preservation Act, 54 U.S.C. §§ 300101 et seq., the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq., and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.  Compl. ¶¶ 1, 111-142 & at 38.

Before this Court are defendants' and defendant-intervenor's motions to transfer this action to the U.S. District Court for the Southern District of Texas.  See Gov't's Mot. to Transfer, Dkt. 14; SpaceX's Mot. to Transfer, Dkt. 15.  Plaintiffs oppose transfer.  See Opp'n.  The motions are now ripe for resolution.[3]

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  District courts have broad discretion to transfer a case and must "adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  "And the moving party bears the burden of establishing that the transfer of the action is proper."  Smith v. Yeager, 234 F. Supp. 3d 50, 55 (D.D.C. 2017) (citation omitted).

---

[3] Since these motions became ripe, plaintiffs filed a motion for a preliminary injunction.  See Mot. Prelim. Inj., Dkt. 24.  The Court expresses no opinion on the merits of that motion, which will be for the transferee court to resolve.

As a threshold matter, the court must determine "under section 1404(a) . . . whether the action could have been brought in the transferee forum." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 32 (D.D.C. 2002) (citing Van Dusen, 376 U.S. at 622). If so, the court must "balance a number of private and public interest factors" to determine whether transfer is appropriate. S. Utah Wilderness All. v. Norton ("SUWA I"), 315 F. Supp. 2d 82, 86 (D.D.C. 2004). The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. Trout Unlimited v. USDA, 944 F. Supp. 13, 16 (D.D.C. 1996) . And the public interest factors are: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. Id.

## ANALYSIS

To begin, this Court must determine whether the present action could have been brought in the Southern District of Texas. See Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 32; see also 28 U.S.C. § 1404(a). Defendants assert, and plaintiffs do not challenge, that this action could have been brought in the Southern District of Texas. Gov't's Mot. to Transfer at 5-6; SpaceX's Mot. to Transfer at 6-7. This Court agrees.

A defendant in this suit is an agency of the United States and another is an employee of a United States agency acting in his official capacity, so venue is proper in "any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(e)(1). Here, the present action could have been brought in the Southern District of Texas because the

land proposed to be exchanged is in South Texas, Compl. ¶ 1, and the South Texas Refuge Complex Office has managed a substantial part of the process for the proposed exchange, Jacks Decl. ¶ 26. Moreover, the communities and wildlife that plaintiffs allege will be affected by the proposed exchange are in South Texas, Compl. ¶¶ 16-22, and the final execution of the proposed exchange would be executed in Texas, Jacks Decl. ¶ 30.

With the threshold bar cleared, this Court must now balance the private and public interest factors. Ultimately, these factors tip in favor of transfer.

## I.    Private Interest Factors

### A.  The Plaintiff's Choice of Forum

"Courts ordinarily accord significant deference to a plaintiff's choice of forum." Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 11 (D.D.C. 2007). But "[t]his deference is lessened when the plaintiff does not choose its 'home forum.'" City of W. Palm Beach v. U.S. Army Corps of Eng'rs, 317 F. Supp. 3d 150, 154 (D.D.C. 2018); see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 423 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is then less reasonable." (quotation omitted)). Courts in this circuit "must examine challenges to venue particularly carefully 'to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.'" Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003) (quoting Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)).

Here, no plaintiff can call Washington, D.C. its home forum. Three plaintiffs are based in Texas, Compl. ¶¶ 13-15, and the fourth—the Center—is headquartered in Arizona, id. ¶ 12. The Center highlights that it has an office in Washington, D.C. but fails to establish any meaningful

ties between its D.C. office and the challenged land exchange outside of "lobbying and other advocacy efforts."  Opp'n at 7-8.  And "the fact that the parties each have offices in the District of Columbia is not dispositive of the question of deference."  Flowers, 276 F. Supp. 2d at 67.

Moreover, deference to a plaintiff's choice of forum is further diminished "where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum . . . ."  New Hope Power Co. v. U.S. Army Corps of Eng'rs, 724 F. Supp. 2d 90, 95 (D.D.C. 2010).  "[T]he mere fact that a case concerns the application of a federal statute by a federal agency" is insufficient to create a meaningful tie with this District.  Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 55 (D.D.C. 2012).  Rather, there must be "substantial personalized involvement by a member of the Washington, D.C. agency before the court can conclude that there are meaningful ties to the District of Columbia."  S. Utah Wilderness All. v. Lewis ("SUWA II"), 845 F. Supp. 2d 231, 235 (D.D.C. 2012) (quotation omitted).

Indeed, judges in this District have routinely transferred cases where there is no significant involvement of Washington, D.C. agency officials.  See, e.g., Bergmann v. DOT, 710 F. Supp. 2d 65, 73 (D.D.C. 2010) (granting transfer because "the concurring role of some Washington-based officials is simply insufficient to overcome Michigan's substantial ties" to the challenged construction since the land at issue was in Michigan); Airport Working Grp. of Orange Cnty., Inc. v. DOD, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) ("[A]ny role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees in California . . . ."); Alaska Wilderness League v. Jewell, 99 F. Supp. 3d 112, 121 (D.D.C. 2015) (granting transfer because while Washington officials signed the challenged regulation, they were not "significantly involved in [its] development").

Likewise, the involvement of the Service's Director, based in Washington, and the congressional review period are "insufficient to overcome [Texas]'s substantial ties" to the proposed exchange "because the majority of operative events underlying plaintiff[s'] action occurred outside [Washington]." See Bergmann, 710 F. Supp. 2d at 73-74. The land proposed for exchange concerns two wildlife refuges in Texas, Compl. ¶ 1, the environmental assessment was prepared by Texas-based agency staff in consultation with primarily local stakeholders, EA at 5, 50-52, 200-02, and the FONSI was signed by the Southwest Region Director based in New Mexico, FONSI 1-2.[4]

Moreover, plaintiffs have failed to establish "substantial personalized involvement" by the Service's Director in Washington, D.C. See SUWA II, 845 F. Supp. 2d at 235 (quotation omitted). A mere three days after receiving a recommendation from the Southwest Regional Director, the Director signed off on the proposed land exchange based on the work done in Texas and New Mexico. U.S. Fish & Wildlife Serv. Decision Mem. at 1, 8; Jacks Decl. ¶ 25. And plaintiffs offer no evidence that the Director was personally involved in the development of the proposed exchange. See Alaska Wilderness League, 99 F. Supp. 3d at 121.[5] Similarly, congressional review will be "based on [the] work done" in Texas. See Airport Working Grp., 226 F. Supp. 2d at 230. The review period simply allows Congress "30 days to examine" the proposed land exchange, see 342 FW 5.7.E(3), but the ability to approve and carry out the exchange remains with the Service, see 16 U.S.C. § 668dd. Thus, neither the Director's approval nor the congressional review provide the plaintiffs with the connection to this District they need.

---

[4] Plaintiffs point out that the Southwest Region Director is based in New Mexico, not South Texas, Opp'n at 8, but no party proposes venue in New Mexico and, as explained above, all agree that venue is proper in South Texas.

[5] In their notice of the Director's approval, plaintiffs gesture toward the involvement of the Department of the Interior's Appraisal and Valuation Services Office, based in D.C., in appraising the land's value. See Pls.' Notice at 2; U.S. Fish & Wildlife Serv. Decision Mem. at 3. The Court does not find that this isolated duty amounts to significant involvement by D.C.-based officials in the exchange process.

Finally, plaintiffs attempt to connect their complaint to Washington by asserting that the federal defendants reside here. Opp'n at 7. However, "the fact that the [d]efendants are located in the District of Columbia does not create a substantial factual nexus between [p]laintiff's [c]omplaint and the District of Columbia." City of W. Palm Beach, 317 F. Supp. 3d at 154.

Ultimately, since this District is not the plaintiffs' home forum and they have not provided sufficient evidence to create a meaningful tie between the present action and this District, the Court accords limited deference to the plaintiffs' choice of forum.

## B.  The Defendants' Choice of Forum

"A defendant's choice of forum must be accorded some weight if the defendant presents legitimate reasons for preferring to litigate the case in the transferee district," which can "counterbalance[] the diminished deference owed to [p]laintiff's choice of forum." Gulf Restoration Network v. Jewell, 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (quotation omitted). "In Administrative Procedure Act ("APA") cases, a defendant's choice of forum deserves some weight where the harm from a federal agency's decision is felt most directly in the transferee district." Id. (quotation omitted).

Here, defendants present legitimate reasons in favor of transfer to the Southern District of Texas. As stated above, the land proposed for exchange is in Texas, the proposal's development has largely been carried out in Texas, and the exchange would be executed in Texas. Further, the effect of the Service's decision to transfer land to SpaceX will certainly be "felt most directly" in South Texas. See id. In their complaint, plaintiffs point to their "numerous members who live near and/or regularly visit" the Rio Grande Refuge for recreational, educational, and professional purposes who would suffer "actual, concrete injuries" because of the proposed land exchange affecting their "ability to use and enjoy" the Refuge. Compl. ¶¶ 16-21. Thus, "[t]he lack of

10

meaningful ties between [this] controversy and the District of Columbia stands in sharp contrast to the significant ties . . . between [this] controversy and [Texas]." Flowers, 276 F. Supp. 2d at 68. In balance with the plaintiffs' choice of forum, which receives limited deference, the defendants' choice of the Southern District of Texas weighs in favor of transfer.

### C. Where the Claim Arose

Defendants argue that the third factor—where the claim arose—favors transfer because plaintiffs' claims arose in South Texas. See Gov't's Mot. to Transfer at 10-11. And plaintiffs argue that this factor is neutral at best because the decision-making that gave rise to their claims was "diffuse" across Texas, New Mexico, and Washington, D.C. See Opp'n at 10-11. But because so much of the decision-making and substantive work was carried out in Texas, this Court finds the third factor favors transfer.

"In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009). And "[w]here the decision-making process was concentrated in a particular city or state, courts have found this factor to weigh heavily in the transfer analysis." Gulf Restoration Network, 87 F. Supp. 3d at 313. Judges in this district have consistently transferred cases to the district where most substantive decisions occurred. See, e.g., Alaska Wilderness League, 99 F. Supp. 3d at 119-20 (finding the third factor favored transfer because "the material decisions in this case came not from the Department of the Interior in Washington, D.C., but from the Fish and Wildlife Service's regional office in Alaska" and "all of the substantive work . . . was done in Alaska," including the proposed rule, environmental assessment, and public responses); Ute Indian Tribe of Uintah & Ouray Rsrv. v. Dep't of Interior, 560 F. Supp. 3d 247, 267 (D.D.C. 2021) (granting transfer to Utah because the challenged contract "was negotiated and

signed in Utah and the [defendants] directed public comments and public meetings about the Contract's environmental impact to Utah").

Here, the bulk of the decision making and substantive work was done in South Texas or out of the Service's Southwest Region office, which manages Texas refuges. And, as noted above, the proposed land exchange has been managed by the Southwest Region Office in New Mexico and South Texas Refuge Office in Texas, in collaboration with SpaceX, also based in Texas. Jacks Decl. ¶ 26. Further, the environmental assessment was prepared in Texas with input from many Texas-based organizations and the FONSI giving initial approval was signed by the Director of the Southwest Region in New Mexico. See Jacks Decl. ¶ 20; FONSI 1-2. Ultimately, the subject matter of this work was the land located in South Texas and the environmental, cultural, and biological impact this exchange may have on Texas and its residents.

Plaintiffs argue that this factor is neutral or disfavors transfer because the involvement of the Southwest Regional Director in New Mexico, the required approval of the Director in Washington and the congressional review period mean that "the focal point of federal agency decisionmaking is . . . in D.C. and New Mexico, not Texas." Opp'n at 11. But again, judges in this District have rejected similar arguments and transferred cases even when some decision-making occurred in this District. See, e.g., City of W. Palm Beach, 317 F. Supp. 3d at 155 (transferring the action because "[w]hile some of the relevant policy decisions may have occurred [in the District of Columbia]," "the action that ultimately gave rise to [p]laintiff's [c]omplaint and that [p]laintiff seeks to enjoin" was based in South Florida); W. Watersheds Project v. Vilsack, Civ. A. No. 21-3056, 2022 WL 22744938, at *5 (D.D.C. Sept. 20, 2022) (rejecting plaintiffs' argument that the claim arose in Washington D.C. because while "final review and authorization . . . involved D.C.-based officials," those decisions were based on work done in Wyoming).

In sum, plaintiffs are ultimately challenging a proposed South Texas land exchange based primarily on work carried out in South Texas.  Hence, where the claim arose weighs in favor of transfer.  See City of W. Palm Beach, 317 F. Supp. 3d at 155.

### D.  The Convenience of the Parties

The fourth factor—the convenience of the parties—supports transfer as it would be more convenient for the parties to litigate in South Texas.  Three of the four plaintiffs are based in Texas, see Compl. ¶¶ 13-15, and cannot make a reasonable claim that they would be inconvenienced by litigating there.  The remaining plaintiff has an office in Washington, D.C., Opp'n at 7, but is headquartered in Arizona, SpaceX's Mot. to Transfer at 1.  Further, the members that plaintiffs allege will be harmed by the proposed land exchange are located in South Texas.  See Compl. ¶¶ 16-21.  While federal defendants are based in Washington, D.C., id. ¶¶ 23-24, defendants have made clear that it would be more convenient for them to litigate in South Texas since the Service "employees who manage the refuge and impacts on the refuges' land are in South Texas."  Gov't's Mot. to Transfer at 11.  And Intervenor-Defendant SpaceX is headquartered in Texas.  Styer Decl. ¶ 5.

Moreover, despite plaintiffs' arguments to the contrary, the location of the parties' counsel does not weigh heavily on the convenience factor.  Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 143 (D.D.C. 1979) ("The inconvenience experienced by plaintiffs' counsel in the District of Columbia, in having to travel to [the transferee forum] or retain local counsel there, is of minor, if any, importance under [section] 1404(a)."); see also Nw. Forest Res. Council v. Babbitt, Civ. A. No. 93-1579, 1994 WL 908586, at *3 n.6 (D.D.C. Apr. 13, 1994) ("Although defendant's counsel are located in the District of Columbia, any inconvenience to them is offset by the fact that

they represent the party requesting the transfer.").  Accordingly, the convenience of the parties favors transfer.

### E.  Convenience of the Witnesses and Ease of Access to Sources of Proof

In APA cases, as here, the final two private interest factors—the convenience of witnesses and the ease of access to sources of proof—"are neutral with respect to transfer" when the "case will be decided on the basis of the administrative record."  Pres. Soc. of Charleston, 893 F. Supp. 2d at 56; see also Stewart v. Azar, 308 F. Supp. 3d 239, 248 (D.D.C. 2018) ("[T]he convenience of witnesses and the ease of access to sources of proof are not likely to be relevant [in APA cases]." (quotation omitted)).  Here, no party disputes that this case will be resolved largely based on the administrative record, so these factors are neutral regarding transfer.[6]  See Pres. Soc. of Charleston, 893 F. Supp. 2d at 56.

## II.    Public Interest Factors

### A. The Transferee's Familiarity with the Governing Laws and the Relative Congestion of the Potential Transferee and Transferor Courts

The first two public interest factors—the transferee court's familiarity with the governing law and the relative congestion of the courts—are both neutral with respect to transfer.

It is a "well settled" principle "that no federal court is more competent than any other to resolve questions of federal law."  Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70, 78 (D.D.C. 2013) (citing In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987)).  And because "both [the transferee and transferor] courts are competent to interpret . . . federal statutes[,] . . . there is no reason to transfer or not transfer based on this factor."

---

[6] While this factor remains neutral, SpaceX also observes that the sources of proof provided by the plaintiffs in their motion for a preliminary injunction are focused on South Texas.  See SpaceX's Resp. to Pls.' Notice  at 1, Dkt 31 (highlighting "five declarations from individuals who live in or visit South Texas" and "documents, photographs, and maps focused on South Texas lands and resources").

Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006).  Plaintiffs here base all their claims on federal law, see Compl. ¶ 1, so neither this District nor the Southern District of Texas is better equipped to resolve plaintiffs' claims, see Oceana, 962 F. Supp. 2d at 78.  Thus, this factor is neutral towards transfer.

Turning to the second factor, "[a]bsent a showing that either court's docket is substantially more congested than the other, this factor weighs neither for nor against transfer."  Pres. Soc. of Charleston, 893 F. Supp. 2d at 57 (quotation omitted).  The "crux" of this factor is "the potential speed of disposition."  BlueTriton Brands, Inc. v. U.S. Forest Serv., Civ. A. No. 24-2302, 2024 WL 5453421, at *4 (D.D.C. Oct. 23, 2024) (quotation omitted).  Plaintiffs argue that this factor weighs against transfer, presenting statistics that cases filed per judgeship in the Southern District of Texas far outnumber those in this District and that the Southern District of Texas has a "pattern of slower case resolutions."  Opp'n at 14.  Defendants, on the other hand, contend that this factor is neutral, citing that the "speed of disposition is about equal" between districts, and that the "Southern District of Texas also terminates many more cases per judge."  Gov't's Reply at 7-8, Dkt. 22.

As of March 31, 2026, the speed of disposition of civil cases in the Southern District of Texas, 7.9 months, and this District, 7.3 months, is close to equal.  United States Courts, Table N/A—U.S. District Courts—Combined Civil & Criminal Federal Court Management Statistics (Mar. 31, 2026), https://perma.cc/ZMQ3-XK9Q ("2026 U.S. Court Statistics"), at 2, 36.  And "a difference of less than one month cannot be called" "substantial."  Alaska Wilderness League, 99 F. Supp. 3d at 118 (citation modified).  Further, while plaintiffs are correct that the Southern District of Texas experiences more cases per judgeship than in this District (1,117 per judge compared to 328 per judge), defendants are correct in noting that the Southern District of Texas terminates many more cases per judge than in this District (944 per judge versus 285 per judge).

15

2026 U.S. Court Statistics at 2, 36.  Thus, because there is no evidence that the Southern District of Texas is "substantially more congested" than this District, this factor is neutral.  See Pres. Soc. of Charleston, 893 F. Supp. 2d at 57.

### B.  The Local Interest in Deciding Local Controversies at Home

"Perhaps the most important factor in the motion-to-transfer balancing test is the interest in having local controversies decided locally."  Alaska Wilderness League, 99 F. Supp. 3d at 116 (quotation omitted).  And "in cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  There is a local interest in having localized controversies decided at home."  Adams v. Bell, 711 F.2d 161, 167 (D.C. Cir. 1983) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)).  Of particular relevance in this case, "[l]and is a localized interest because its management directly touches local citizens."  SUWA I, 315 F. Supp. 2d at 88.

Suits that involve "environmental regulation[] and local wildlife," such as here, "should be resolved in the forum where the people whose rights and interests are in fact most vitally affected by the suit" live.  Trout Unlimited, 944 F. Supp. at 19-20 (quotation omitted) (finding significant local interest because the administrative decision concerning the reservoir "directly affects Colorado's . . . National Forests, water systems, wildlife, and more importantly, its people"); see also, e.g., W. Watersheds Project v. Pool, 942 F. Supp. 2d 93, 102 (D.D.C. 2013) ("[T]he District of Utah possesses a significant and predominate interest in this suit given the impact its resolution will have upon the affected lands, wildlife, and people of that district." (quotation omitted)); Alaska Wilderness League, 99 F. Supp. 3d at 116 (finding the suit was "local at every turn" because the regulation applied "only [to] activities in the Chukchi Sea around (and within) Alaska's sovereign territory").  Moreover, judges in this District have applied "[t]his rationale . . . to controversies

16

involving federal decisions that impact the local environment, and to controversies requiring judicial review of an administrative decision." Flowers, 276 F. Supp. 2d at 70.

The heart of this action is the 715 acres of Rio Grande Refuge land that is proposed for exchange to SpaceX. This land is "a localized interest," see SUWA I, 315 F. Supp. 2d at 88, concerning South Texas residents "whose rights and interests" would be most affected by the proposed land exchange, see Trout Unlimited, 944 F. Supp. at 20. The alleged effects and injuries caused by the proposed exchange would be felt most directly by the local community members, environment, and wildlife in South Texas. See Compl. ¶¶ 16-21 (alleging that the exchange will impair community members' "recreational, spiritual, professional, scientific, educational, and aesthetic" use and enjoyment of the Refuge). Moreover, defendants put forth that SpaceX generates billions in economic output for Cameron County and its operations support "more than 20,000 jobs in the Rio Grande Valley," each of which is expected to grow, in part, due to the proposed land exchange. Styer Decl. ¶¶ 11-15. Thus, there is significant local interest in this dispute.

Conversely, plaintiffs claim that this case is of national interest since it affects a National Historic Landmark and a National Wildlife Refuge that is part of the "national migratory bird management program." Opp'n at 15-16. But any national importance this proposed exchange carries is far outweighed by the overwhelming localized interest in this action. Judges "in this district have . . . transferred plenty of cases that arguably affected regional or national environmental interests so that disputes could be decided where the great bulk of their effects would be felt." W. Watersheds Project, 2022 WL 22744938, at *3; see, e.g., Flowers, 276 F. Supp. 2d at 71 (concluding that while "the plaintiffs' claims invoke federal law, relate to the Everglades, and are brought by national environmental organizations," significant local interest favored

17

transfer to Florida); <u>Alaska Wilderness League</u>, 99 F. Supp. 3d at 117 (holding that the challenged regulation's direct effects on "Alaskan lands, livelihoods, waters, and wildlife" outweighed any national concerns).  Moreover, "there is no 'blanket rule that national policy cases should be brought' in the District of Columbia[,] . . . instead, [courts] must undergo the usual 'case-by-case determination' mandated by the transfer statute."  <u>Alaska Wilderness League</u>, 99 F. Supp. 3d at 117 (quoting <u>Starnes v. McGuire</u>, 512 F.2d 918, 928 (D.C. Cir. 1974)).[7]

Again, the proposed exchange at issue concerns land in South Texas, and while national wildlife refuges and historic landmarks are certainly matters of national concern, the direct impacts will be felt primarily in South Texas.  Thus, the local nature of this dispute outweighs any national concerns and this factor strongly favors transfer to the Southern District of Texas.

* * *

In sum, the limited deference afforded to plaintiffs' choice of forum, the legitimate reasons for the government's and SpaceX's choice of forum, and the claim arising primarily in South Texas all support transfer.  Moreover, the local interest in deciding this predominantly South Texas dispute locally weighs strongly in favor of transfer.  Accordingly, both the private and public interest factors tip toward transfer to South Texas.

---

[7] In their notice of the Director's approval, plaintiffs also point out that this land exchange implicates national security because SpaceX provides technology for national defense.  Pls.' Notice at 2; U.S. Fish & Wildlife Serv. Decision Mem. at 4.  But plaintiffs do not explain why that fact should override the otherwise predominant local concerns.  <u>See, e.g.</u>, <u>Alaska Wilderness League</u>, 99 F. Supp. 3d at 117.  The Court therefore agrees with defendant-intervenor that the contents of the memorandum recommending approval "do not make D.C. the locus of this dispute or outweigh the interests in hearing the case in the Southern District of Texas."  SpaceX's Resp. to Pls.' Notice at 1.

18

**CONCLUSION**

For the foregoing reasons, the Court will grant defendants' motions to transfer this case to the U.S. District Court for the Southern District of Texas.  A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Date: July 28, 2026